# AULD vs. CLARK.

*Sixth District Court, for Sacramento Co., November,* 1857.

## LIABILITY—DAMAGE—AGENT.

Where damage is suffered in consequence of the unskillful execution of an act, performed by an artisan, hired to do certain work in his regular *trade*, the *tort-feasor*, and not the employer, is liable therefor.

The employer is only liable where the relation of master and servant, or of principal and agent, exists, which is not the case in the above instance.

When the injury arises, not from the *manner* of doing the work, but from the *fact* of its

being done *at all*, or where the employer sanctions the manner in which it is done, the relation of principal and agent exists.

The facts are set forth in the opinion.

*Cole & Whiting* and *E. D. Baker*, for plaintiff.

*Sunderland* and *Clark & Gass*, for defendant Pershbaker.

*Long & Morrison*, for defendant Clark.

Botts, J.—The plaintiff was a dry goods merchant, keeping a shop on J street, between 4th and 5th streets, in the city of Sacramento. The defendant, Pershbaker, was the owner of the house in which the shop was kept. Clark, the other defendant, was the owner of the adjoining lot. The foundation of Pershbaker's house did not extend more than twelve inches below the surface of the earth. The base of Pershbaker's eastern wall projected about nine inches over the line dividing his lot from Clark's. Clark proposing to build a house on his lot, with a cellar, Pershbaker entered into a contract with Clark; whereby it was agreed that Clark should have Pershbaker's wall underpinned to the depth of Clark's excavation ; that the expense of said underpinning should be borne jointly by Clark and Pershbaker ; that the wall of Pershbaker, as it then stood, should be valued by arbitrators, that Clark should pay to Pershbaker one-half of such valuation, and that said wall should be a party wall between Clark and Pershbaker. Clark employed one Eisen, an architect, to contract for, and superintend the erection of his building, including the underpinning of the party wall. Eisen contracted, on Clark's behalf, with one Turtin, a builder and contractor, for the excavation of Clark's lot, the underpinning of the party wall, and the erection of the building. In the course of the excavation, the eastern wall of Pershbaker's house fell, and injured the goods of the plaintiff. The excavation, when the wall fell, had not approached nearer than two and a half feet at the top, and three and a half feet at the base, to the line of Clark's lot. It was admitted that the caving was in consequence of the superincumbent weight of Pershbaker's wall, and upon this evidence and this admission, a judgment, as of non-suit, was rendered in favor of the defendant, Clark, who had answered separately, upon the ground that he was not liable for any damage arising from the caving in of Pershbaker's earth, if that cav-

ing was the result, not of the natural condition of the earth, but of the pressure occasioned by the superstructure of Pershbaker's erection; any liability upon the part of Clark, accruing from the contract between Clark and Pershbaker could not, for want of privity, be enforced by the plaintiff Auld. It came, then, to this: If Pershbaker was proceeding to excavate and underpin the wall of his house, and authorised Clark to contract for the work, and Clark authorised Eisen to contract for him, and Eisen did contract with Turtin, did the injury result from the unskillful manner in which the excavation was made, and what was the amount of damage sustained by the plaintiff. Upon the trial it was agreed that the following questions should be submitted to the jury, to be found upon by them in the form of a special verdict, and that any other facts necessary to the determination of the case, should be determined by the court:

1. Was the work from which the injury resulted done with the assent of Pershbaker for the joint benefit of Pershbaker and Clark? To this question the jury returned an answer in the affirmative.

2. Did the injury result from the negligence and unskillfulness of the contractor? To this question the jury returned an answer in the affirmative.

3. What amount of damages did the plaintiff sustain by the falling of the wall? Answer—one thousand dollars.

If, upon these facts, the defendant, Pershbaker, is legally liable, then should a judgment against him for one thousand dollars be entered in favor of the plaintiff, otherwise the judgment should be for the defendant.

The case involves the consideration of the doctrine of "*respondeat superior*," and a determination of the principles upon which it rests. No question has been more mooted in the whole science of the law. If we were content, as the civilians are, to let every case be tested by its particular merits, there would be no difficulty; but such is not the spirit of the common law. The first principle of that noble system requires that the community shall know the rule by which they are to be governed; and that they may know, it shall be clearly and explicitly declared, in terms which shall include all cases that can by probability arise. For the terms of this rule, by which one man is to be held responsible for the acts of another, the English and American judges

have been groping about for the last half century. It was at first said to be a consequence of the relation of master and servant, and the liability of the parties was to be determined by the existence of this relation. But this was not sufficiently definite, for it left two questions still open : what is the definition of servant, and for what acts of the servant shall the master be liable. Servants were defined to be menials, day laborers, or those who worked *extra moniis*, apprentices and stewards, factors, and bailiffs, who were reckoned as *quasi* servants.

At first the superior of all who came within the category of servant so defined, was held responsible for all damages arising from the malicious, as well as the negligent or unskillful act of the servant. But in McManus vs. Crickett, 1 *East.*, 106, it was held that the doctrine of the responsibility of the superior rested upon the presumed control exercised over the servant ; therefore, to make the master liable, the injurious act of the servant must have been committed whilst engaged in the business of his employer ; and when he acted from a malicious motive, he could not be said to be *quoad hoc* the particular act, transacting his master's business, even though the injury were committed with the property of the master ; as in the case of a coachman maliciously driving his master's coach against the horse or vehicle of another. This was in the year 1800, and through much opposition, for it was urged that the coachman being employed to drive cautiously, the master should be no more responsible for his negligent than for his malicious driving ; through much controversy, I say, the rule that the master is liable for the neglect and not the malicious acts of his servant, has become the law both in England and America.

In Bush vs. Steinman, 1 *Bos. & Pull.*, decided about the same time, it was held that this liability of the superior extended to the wrongful acts of his contractors, sub-contractors, and their agents and servants, *ad infinitum*. In Laugher vs. Pointer, 5 *Barn. & Cres.*, decided in 1826, the authority of Bush vs. Steinman was doubted, and it was held that where one hired a driver of a livery stable keeper, for injury resulting from his negligent and unskilful driving, the owner of the horses was not liable. The same question arose in Onarman vs. Burnett, and was decided upon the authority of Laugher vs. Pointer, although it was intimated that there might be a distinction between acts done in and about movable and immovable property.

Nothing could be more unsatisfactory than the condition in which this case left the general principle. Then and lastly, in 1849, came the case of Reedie vs. The L. & N. W. Railroad Company, reported, 4 *Welsb. Hurlst. & G.* This decision is the more worthy of notice, because it is cited, and with approbation, by the Supreme Court of *California*, in the case of Janes vs. The City of San Francisco.* In this case it was held that Bush vs. Steinman was not law; that the distinction between movable and immovable property was unsound ; and where the contractor employed is carrying on an independent business, such contractor, and not the owner, is liable for the injury arising from his own unskillfulness, or the negligence of his employé ; the only requirement of the owner being, that he shall use reasonable care in the selection of a contractor of fair repute. The liability of the owner, it seems to me, must rest either upon the relation of master and servant, or of principal and agent. Where neither of these relations exists between the *tort feasor* and the party sought to be charged, there can be no liability. To the mere fact of ownership, no importance can be attached. I am liable for damages arising from the negligence of my coachman, not because the coach he is driving belongs to me, but because he is my servant, and I am his master.

Hence it was held that the owner of cattle was not liable for the damages arising from the unskillfulness of the driver, the servant of a licensed drover who had contracted to drive the cattle to Smithfield.

From these cases we gather, that when the injurious act is committed by one filling the office of a servant, the doctrine of *respondeat superior* prevails, and to ascertain who the superior is, we have only to inquire whose servant the actor is. He cannot have two distinct and separate masters. But the great question to be solved is, who and what is a servant ? Is my coachman the less my servant because he contracts to drive my horses for a stipulated sum ? and here I think comes in the test hinted at in Reedie vs. The L. & N. W. Railway Company. If the thing to be done is the subject of a substantive and distinct calling ; in short, of a *trade*, the employé and not the employer is responsible for the damage arising from the manner in which the work is done. "*Expert*" is a term well known to the law, and whenever the work to be done is the business of an expert, all that can be

* 6 Cal. Oct. T.

required of a layman, so to speak, is to use reasonable care to commit his business, which may be injurious to others, as it is skillfully or unskillfully performed, to the hands of an expert of good repute. To go beyond this, and make an ordinary business man responsible for the acts of a scientific engineer or architect, acts, the result of which it being impossible to foresee, he could not control, would be neither just nor politic. When, however, the work directed to be done, results in injury to another, not from the manner in which it is done, but from the fact of its being done at all, or where the manner producing the injury is prescribed or sanctioned by the employer, then arises the relation of principal and agent. He who orders may be held to answer, upon the principle *qui facit per alium, facit per se ;* or they may both be sued as joint trespassers, or joint tort feasors.

Now, let us apply these principles to the case in hand. Pershbaker employs Clark to contract for the underpinning of his house ; Clark employs Eisen to contract for him. So far, perhaps, Clark and Eisen are agents of Pershbaker ; but Eisen employs Turtin, a tradesman, to perform a work of art, requiring the skill of an expert, leaving the mode of performance to the judgment of the contractor ; and from the unskilfulness of this expert, damage is caused to the plaintiff.

Suppose I employ a physician of good standing, to attend a member of my household afflicted with some infectious disorder, and by the negligence and unskillfulness of the physician the disorder spreads, am I, either legally or morally, responsible for such consequences? and yet that case differs not in principle from this. I think judgment must be rendered for the defendant ; upon obvious principles of reason and policy, and upon the faith of modern decisions, it is not to him that the plaintiff must look for any damage he may have sustained.

Let judgment be entered for the defendant.